UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LESLIE BARNAVE,

                                      Plaintiff,

    v.                                                                                            1:20-CV-776
                                                                                            (DNH/ATB)

NEW YORK STATE DEP'T OF
FINANCIAL SERVICES, et al.,

                                      Defendants.

---

LESLIE BARNAVE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the court is a pro se complaint, filed pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (Complaint ("Compl.")) (Dkt. No. 1). Plaintiff has paid the filing fee.

**I.**    **Initial Review**

Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court

process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

The complaint is lengthy and confusing. Plaintiff is suing the New York State Department of Financial Services ("NYSDFS") and the New York State Office of Temporary and Disability Assistance ("NYSTDA"). Plaintiff states that she is bringing this action pursuant to 18 U.S.C. §§ 1962(c), (d) and 1964(a), (c), based upon a "conspiracy to perpetrate insurance fraud in violation of 18 U.S.C. § 1341; and, obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), (d)(1), and 1519."

Plaintiff begins her complaint by stating that in October of 1999, she sustained "serious vehicular injuries," which caused her permanent disability within the meaning of 42 U.S.C. § 12102.[1] (Complaint ("Compl.") ¶ 7) (Dkt. No. 1). Plaintiff also states that, at the time of her accident, she was fully insured for disability insurance benefits ("DIB"), administered by the Social Security Administration ("SSA"). (Compl. ¶ 8).

---

[1] Plaintiff is referring to the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq.

Apparently, the "parties," responsible for the accident also had an insurance policy for the motor vehicle, issued by Frontier Insurance Company ("Frontier"). (Compl. ¶ 9).

Plaintiff states that she filed a law suit in June of 2000, relating to the above accident and requesting five million dollars in damages, but it appears that she accepted a settlement of $2,188.00 for the property damage claim in March of 2001 "while under duress, i.e. the subject of malicious prosecution, and false imprisonment (November 2000 through June 2001) perpetrated by (unethical) New York State licensees of the British Accreditation Registry (henceforth, BAR),[2] employed by the County of Kings District Attorneys Office . . . ." (Compl. ¶¶ 11, 12). Plaintiff's attorney, who was from the firm of Jacoby & Meyers, apparently proposed an "absurd" settlement offer for the personal injuries, which was refused. (Compl. ¶ 13).

Plaintiff's next paragraph is unclear. It appears that plaintiff alleges that she discovered that her "legal agent" did ***not***[3] file a claim for DIB within six months of "the debility (i.e. April 2000)," so plaintiff went to the Social Security Administration and applied for benefits herself. (Compl. ¶ 14). Plaintiff obtained new counsel in 2001, and Tarik Davis, Esq. began representing plaintiff in her pending civil action relating to the car accident. (Compl. ¶ 15).

Plaintiff states that, "unbeknownst to plaintiff," Frontier ceased business

---

[2] Plaintiff is apparently equating the British Accreditation Registry ("BAR") with attorneys who are admitted to the "bar." The BAR is associated with a "sovereign citizen conspiracy theory about the licensing of attorneys. https://www.snopes.com/fact-check/british-accredited-registry-bar/

[3] The complaint actually states that plaintiff discovered that the "legal agent . . . didn't disclose he initiate [sic] a claim for DIB within six months from the commencement of the debility . . . . Plaintiff personally visited the SSA on July 9, 2001 and submitted applications for DIB, and Supplemental Security Income (henceforth SSI)." In any event, plaintiff is stating that she ultimately applied for disability benefits. (Compl. ¶ 14).

3

operations in 2000. (Compl. ¶ 16). Plaintiff states that Frontier was still responsible for "damages" resulting from her personal injuries, and Frontier had already contacted defendant NYSDFS to arrange for an "Order of Rehabilitation," which would enable New York State to take possession of Frontier and thus, become "liable for up to $997,812 concerning plaintiff's personal injury damages." (*Id.*) Plaintiff states that "this fact became public in October 2001." (*Id.*)

Plaintiff then states that in August of 2001, employees of defendant NYSTDA subjected plaintiff to discrimination "via obstruction of justice, and libel while processing Plaintiff's DIB/SSI claims." (Compl. ¶ 18). Plaintiff alleges that her first applications were denied due to a fraudulent medical evaluation by NYSTDA. (*Id.*) Plaintiff alleges that the appeal of these claims was a "whitewash" of justice which lasted more than six years and was "perpetrated by several unethical licensees of the BAR employed as SSA administrative law judges; an unethical United States District Judge; and, (again) unethical staffer(s) employed at the [NYSTDA]." (Compl. ¶ 19). Plaintiff states that her "righteous" claims were "officially frustrated in May 2007." (*Id.*)

Plaintiff claims that "during this ordeal," she was also discriminated against by the New York State Department of Health Office of Health Insurance Programs ("OHIP"). (Compl. ¶ 20). Plaintiff claims she was subject to discrimination in Medicaid services, and that the OHIP refused to pay for prescribed orthotics and refused to provide coverage for pain management "in violation of public policy." (*Id.*) Plaintiff states that she was not granted insurance for a consultation with a pain management physician until 2014. (*Id.*)

Plaintiff states that the "obstruction" of Medicaid services violated her civil rights and undermined her ability to obtain medical evidence from qualified physicians, which would have substantiated the pain that she suffered from her debilitating injuries, relevant to both her DIB/SSI and civil action claims. (Compl. ¶ 21). Plaintiff states that the "investigations" involved people employed directly, or practicing a profession, licensed by New York State, "[a] potential conflict-of-interest exploited by unethical licensees of the BAR, operating within the public- and private sector, to the demise of plaintiff's legal claims." (*Id.*)

Plaintiff states that through the years, she also encountered unethical physicians, employed by the NYS Department of Health, who wrote "false" medical reports, contradicting "objective and credible tests." (Compl. ¶ 22). Plaintiff also claims that in 2007, another unethical member of the BAR, who worked for the New York City Human Resources Administration, filed a fraudulent guardianship petition against plaintiff in the New York State Supreme Court, Queens County, falsely alleging that plaintiff was mentally incapacitated, and using false medical evidence created by the employees of the Department of Health. (Compl. ¶ 23). Plaintiff claims that this was a pretense to conceal "the aforesaid malicious prosecution" in 2000 and 2001. (*Id.*) An "ethical" judge ultimately dismissed the petition on July 11, 2007 after a proper investigation. (Compl. ¶ 25).

Plaintiff discusses her pending civil action in the next several paragraphs. She states that in September of 2007, a "legal agent" for the NYSDFS (Frontier) moved to dismiss her case for lack of prosecution because Attorney Tarik Davis, who represented plaintiff in the action since 2002, failed to prosecute the action. (Compl. ¶¶ 26-27). For

the first time, plaintiff mentions that her civil action was brought in the Supreme Court, Kings County. (*Id.*) Plaintiff states that Attorney Davis failed to complete any discovery or file for a "Note of Issue." (Compl. ¶ 27). Plaintiff states that, at the motion hearing in December 2007, Attorney Davis withdrew as counsel without telling the plaintiff. Plaintiff claims that, at the same hearing, the court set a "continuance of discovery" for March of 2008. (Compl. ¶ 28). Plaintiff states that, although Attorney Davis told plaintiff that he would appear at the March 2008 hearing, he did not do so, and the judge dismissed plaintiff's personal injury action.[4] (Compl. ¶¶ 28-29). The Appellate Division, Second Department affirmed the dismissal on October 6, 2009, and plaintiff states that she filed a "civil action" against Attorney Davis in Queens County Supreme Court.[5] (Compl. ¶¶ 31-32).

Plaintiff claims that she obtained evidence from the Social Security Administration's Freedom of Information Officer that substantiated her claim for disability.[6] Plaintiff reapplied for benefits in September of 2012, based on the injuries sustained in 1999. She states that she was again denied benefits "for the same (fraudulent) premise as the initial applications filed July 9, 2001." (Compl. at ¶ 34). Plaintiff states that, rather than go through another six years of appeals, in 2012, she

---

[4] The complaint also contains a brief discussion about plaintiff's driver's license and the NYS Department of Motor Vehicles, but it does not appear to be relevant to the facts against the named defendants. (Compl. ¶ 30).

[5] Later in the complaint, plaintiff alleges that five "unethical" jurists at both the trial and appellate level "unethically frustrate[d]" her "prosecution" of Attorney Davis. (Compl. ¶ 37).

[6] This information was in the form of "irrefutable and material medical statistics," showing that, as of March 2011, there were more than one million beneficiaries between the ages of 18 and 64, receiving DIB, SSI, or both, due to "disorders of the back," "discogenic and degenerative." (Compl. ¶ 33).

petitioned the SSA District Manager and the Governor of the State of New York, who "acquiesced in the agency's violation of public policy." (Compl. ¶¶ 35-36). In 2014, plaintiff also petitioned the New York City Public Advocate Letitia James,[7] who also acquiesced in the violation of public policy by defendant NYSTDA. (Compl. ¶ 38). Plaintiff contacted a legislator, who apparently helped plaintiff obtain a required certification under the ADA so that she could reapply for public assistance. (Compl. ¶ 39). In October of 2014, plaintiff petitioned the Joint Commission on Public Ethics which "acquiesced" in the alleged violation of public policy by defendant NYSTDA. (Compl. ¶ 40).

Plaintiff states that her Congressional representative helped plaintiff reapply for DIB and SSI by telephone on October 31, 2014. However, an employee of the Far Rockaway, New York Office of SSA "libeled" plaintiff in her 2014 application by stating that plaintiff became disabled on December 15, 2012. (Compl. ¶¶ 41-42). Plaintiff states that she mentioned this to an employee at defendant NYSTDA, but that he or she made no effort to remove the material misinformation. (Compl. ¶ 42).

SSA denied plaintiff's application initially, and plaintiff states that she did not wish to undertake the six-year appeal process, but that because plaintiff is the recipient of public assistance the NYCHRA appealed the claim for her. (Compl. ¶ 44). Plaintiff states that she received a compact disc from SSA in July of 2016, and upon review of the documents, found that defendant NYSTDA obstructed justice as in 2001 by committing various "distinct [federal] crimes" to fraudulently disapprove plaintiff's

---

[7] Letitia James, Esq. is currently the Attorney General of the State of New York, having won the election in 2018. *See* https://ag.ny.gov/

claims. (Compl. ¶ 45) (brackets in original).

Plaintiff alleges that the SSA issued a favorable decision in 2017, but that the decision was "misfeasance" because it was "premised on libelous medical information fabricated during the . . . false imprisonment of Plaintiff between November 2000 thru June 2001." (Compl. ¶ 46). Plaintiff states that on August 17, 2018 and again in 2019, she sent petitions "for redress" to every member of the New York State Legislature. With the exception of two senators in 2018, every one "acquiesced to the corruption by the New York State Agencies." (Compl. ¶ 47). Plaintiff again tried to petition New York State Governor Cuomo, to no avail. (Compl. ¶ 48). United States Attorney Grant Jaquith acquiesced by failing to acknowledge plaintiff's claims of corruption. (Compl. ¶ 49).

Plaintiff has attempted to contact President Donald Trump, and the White House acquiesced in 2018. (Compl. ¶ 50). Plaintiff also complains that action taken by the New York Court of Appeals effectively denied his ability to appeal the "unethical" dismissal of plaintiff's civil action against Frontier. (Compl. ¶ 51). Plaintiff states that she has suffered greatly due to the defendants' conduct.[8] (Compl. ¶ 59). Plaintiff seeks almost four million dollars in damages, retroactive DIB benefits from May 2000 to January 2019, and SSI benefits from July 2001 to September 2014.

### III.   **Eleventh Amendment**

####   A.   **Legal Standards**

"'The Eleventh Amendment to the Constitution bars suits against a state in federal

---

[8] Plaintiff states that in 2020 she was finally certified to begin "pain management" with medical marijuana. (Compl. ¶ 52).

court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity.'" *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 390-91 (E.D.N.Y. 2013) (quoting *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is the "real" party in interest. *Id.* at 391 (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). The Eleventh Amendment also bars suits against state agencies and state officers in their official capacities. *See Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir. 2001).

    B.    **Application**

Plaintiff has named two New York State agencies as defendants in this case. The Eleventh Amendment bars such an action. It has been specifically held that RICO does not abrogate the Eleventh Amendment. *Naples v. Stefanelli*, 972 F. Supp. 2d at 391 (citing *Gaines v. Tex. Tech Univ.*, 965 F. Supp. 886, 889 (N.D. Tex. 1997) (collecting cases concluding that RICO does not abrogate states' sovereign immunity)). Thus, this case may be dismissed even though plaintiff paid the filing fee. Even though the court is recommending dismissal based on the Eleventh Amendment, I will conduct a review of plaintiff's other claims for purposes of the determination of whether to allow plaintiff to amend her complaint.

**III.    Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.**

    A.    **Legal Standards**

The RICO statute provides a private right of action to any person injured in her business or property by reason of a violation of Title 18 United States Code, section 1962. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (citing 18 U.S.C. § 1964(c)).  In order to establish a civil RICO claim, the plaintiff must plead the conduct of an enterprise through a pattern of racketeering activity that causes injury to business or property as a result of the RICO violation. *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)).  The pattern of racketeering activity must consist of two or more predicate acts of racketeering listed in 18 U.S.C. § 1961(1), (5). *Id.*  The RICO conduct must be both the proximate and but for cause of the plaintiff's injury. *Id.* at 283.

RICO provides only for injury to business or property.  The statute does not provide recovery for physical or emotional injuries. *Kesick v. Ulloa*, No. 1:10-CV-1248, 2012 WL 2873364, at *9 (N.D.N.Y. July 12, 2012) (quoting *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003)); *Moore v. Guesno*, 485 F. Supp. 2d 300, 305 (W.D.N.Y. 2007).  In addition, it is well-settled that civil RICO "is an unusually potent weapon - the litigation equivalent of a thermonuclear device.  Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Gruber v. Gilbertson*, No. 16-CV-9727, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)) (internal quotations omitted).

    **B.**    **Application**

This court has carefully reviewed the plaintiff's complaint and finds that, in addition to possible violations of Rule 8 and some potential venue issues,[9] plaintiff's claims are frivolous. Plaintiff has simply listed a variety of issues, beginning with her car accident in 1999 and her attempts to obtain Social Security Disability benefits. Plaintiff alleges "insurance fraud," perhaps in an attempt to establish a "predicate act." However, it is unclear how either of the named defendants committed any "fraud."

Plaintiff claims that the State of New York took over Frontier and assumed responsibility for defendant against her personal injury action, which was ultimately dismissed. She also complained about an attorney and various "unethical" judges, trial and appellate, who allowed her case to be dismissed. Plaintiff then complains about unethical doctors who created inconsistent medical records which also contributed to the denial of her Social Security Disability benefits.[10] She also states that in 2016, she found out that defendant NYSTDA committed "distinct [federal] crimes" in connection with the denial of her social security benefits. Plaintiff's statement is vague and does not explain what those "federal" crimes might be. Conclusory allegations are insufficient to state a RICO claim against even a viable defendant. *Jackson v. County of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011). Plaintiff has not alleged a "pattern" of activity by the named defendants, which are agencies of the State of New York. Nor has the plaintiff alleged injury to her business or property.

---

[9] The court would point out that most of the conduct alleged in this complaint occurred in and around New York City, not in the Northern District of New York. Although both "defendants" are listed as having a Northern District of New York address, there could be venue issues which this court will not discuss since plaintiff cannot sue these defendants regardless of their location.

[10] Plaintiff states that she ultimately was given a favorable decision, but that was not acceptable to her, and she requests back benefits.

## IV. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

There is no amendment that plaintiff can make to her complaint that would allow her to sue these defendants under the RICO statute. In addition, any claim for back Social Security Benefits may not be obtained against these defendants, nor can back benefits be obtained under a RICO claim. Even though defendant NYSTDA may be involved in the initial stages of a Social Security benefits application, the ultimate decision is made by the Social Security Administration.

The Social Security Administration is a federal agency. Absent waiver, the federal government, including federal agencies, may not be sued. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The Social Security Act waives sovereign immunity in limited circumstances. 42 U.S.C. § 405(g) and (h). Section 405(g) authorizes judicial review only of a "final decision of the Commissioner of Social Security made after a hearing." *See Califano v. Sanders*, 430 U.S. 99, 108 (1977) ("This provision clearly limits judicial review to a particular type of agency action."). Section 405(h) provides:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or

> governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). In order to obtain a final decision, the individual must go through the administrative review process. *See* 20 C.F.R. §§ 404.900(a); 416.1400(a). Only after receiving notice of the Appeals Council's action may a claimant seek judicial review by filing an action in federal District Court. 20 C.F.R. §§ 404.900(a)(5); 416.1400(a)(5). Plaintiff in this action clearly states that she refused to go through the administrative process because it took too long the first time. The court understands the plaintiff's frustration, and although exhaustion may be waived in certain circumstances,[11] the defendants sued in this action are not proper defendants for such a case. Thus, to the extent that plaintiff is seeking retroactive Social Security benefits, the court will recommend dismissing without prejudice for lack of jurisdiction, but the dismissal should be without the opportunity to amend against these defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that this complaint be dismissed sua sponte based on the defendants' immunity from suit, **WITHOUT PREJUDICE, BUT WITHOUT THE OPPORTUNITY FOR AMENDMENT**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing

---

[11] *See Johnson v. Comm'r of Soc. Sec.*, No. 3:19-CV-01095 (VLB), 2019 WL 6828361, at *2 (D. Conn. Dec. 13, 2019) (citations omitted).

report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 16, 2020

                                                        */s/ Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge